IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHRISTOPHER MAYNARD,

                Plaintiff,             OPINION AND ORDER

v.

                                         20-cv-677-wmc

ANDREW M. SAUL, COMMISSIONER
OF SOCIAL SECURITY,

                Defendant.

---

Under 42 U.S.C. § 405(g), plaintiff Christopher Maynard seeks judicial review of the Social Security Commissioner's final determination upholding an opinion that he is not disabled. Plaintiff raises a single issue on appeal, arguing that Administrative Law Judge ("ALJ") Laurie Wardell failed to adequately assess certain opinion evidence in the record. For the reasons that follow, the court will reverse the denial of benefits and remand for further proceedings consistent with this opinion. Accordingly, the telephonic hearing scheduled for Thursday, August 5, 2021, will also be cancelled.

BACKGROUND[1]

The ALJ found that Maynard suffers from several severe medically determinable impairments, including degenerative disc disease, carpal tunnel syndrome, osteoarthritis of the left thumb, and various mental conditions. The medical record also indicates that Maynard has experienced some issues with his elbow and knees, although the ALJ did not find these impairments to be severe. According to Maynard, his impairments rendered

---

[1] The following facts are drawn from the administrative record, which can be found at dkt. #15.

him disabled and unable to work beginning on February 2, 2018. As of this date, Maynard was fifty-one years old, with past relevant work as a cleaner (an unskilled, light exertion occupation).[2]

On March 7, 2018, Maynard filed a Title II application for a period of disability and disability insurance benefits; and on March 14, 2018, he filed a Title XVI application for supplemental security income. After his claim was denied initially and again on reconsideration, he requested a hearing before an ALJ, which was held on September 19, 2019. Following that hearing, ALJ Wardell issued a written opinion concluding that Maynard has the residual functional capacity ("RFC") to perform light work, except he can:

> frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, and crawl; frequently handle bilaterally; have occasional[] exposure to hazards; perform simple, routine, repetitive tasks with simple, work-related decisions and occasional changes; and have exposure to moderate noise environment or quieter, as defined by the SCO.

(AR at 113.) In arriving at this RFC, the ALJ considered the opinions of Josephine Ng, D.O. -- a physician who treated Maynard for a number of years -- and two state agency doctors, William Fowler, M.D. and James Hinchen, M.D. Ultimately, the ALJ concluded that sufficient jobs existed in the national economy that Maynard could perform, and so, she found him not disabled under the meaning of the Social Security Act. (AR at 119.)

---

[2] Beginning in July of 2017, Maynard also worked part-time as a driver delivering medicine to hospitals and treatment centers. (AR at 186.) While this employment continued past his alleged onset date, there appears to be agreement that it never reached substantial, gainful activity levels within the meaning of Social Security regulations. Maynard continued to work part time in 2018 and 2019, but those earnings were also well below substantial gainful activity levels. (AR at 111.)

OPINION

The standard by which a federal court reviews a final decision by the Commissioner of Social Security is well-settled.  Specifically, findings of fact are "conclusive," so long as they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Provided the Commissioner's findings under § 405(g) are supported by such "substantial evidence," therefore, this court cannot reconsider facts, re-weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ.  *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).  Similarly, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner.  *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993).  At the same time, the court must conduct a "critical review of the evidence," *id.*, and insure the ALJ has provided "a logical bridge" between findings of fact and conclusions of law.  *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).  Thus, the court must review plaintiff's challenge on appeal under this deferential, yet discerning, standard.

Plaintiff argues on appeal that the ALJ erred by purporting to discuss but failing to consider properly the opinion of Dr. Ng, who treated Maynard for several years, as well as the opinions from the two state agency doctors.  At the outset, the court acknowledges this issue is governed by new rules adopted in January of 2017 by the Social Security Administration regarding agency review of disability claims involving opinions of a

3

claimant's treating physician. 82 Fed. Reg. 5844-84 (Jan. 18, 2017).[3] In evaluating claims filed March 27, 2017, or later, the new regulations provide in relevant part that the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). Under these regulations, the "most important factors" in weighing a medical source's opinions are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). As for supportability, the regulations state: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(1). For consistency, the regulations further state: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(2). Finally, an ALJ may, but is not required to, explain how she considered the source's relationship with the claimant, specialization, and any other relevant factors. 20 C.F.R. § 404.1520c.

Dr. Ng provided her opinion on April 19, 2017, after Maynard scheduled an appointment for the purpose of receiving a disability evaluation. (AR at 1710.) The last time Dr. Ng had seen Maynard before then was February 13, 2015. (AR at 1710.) Dr.

---

[3] Although plaintiff's counsel previously argued to the ALJ that these new regulations should not apply (AR at 117), he does not raise this argument again before this court, and instead, cites to the new regulations in his brief as well. (Pl.'s Br. (dkt. # 21) 12.)

4

Ng noted that Maynard experienced "a lot" of knee pain, even after a surgery intended to treat the pain. (AR at 1710.) She also noted Maynard's "history of surgical repair on the elbows," and permanent restrictions that were provided by another doctor as a result. (AR at 1710.) Upon examination, Dr. Ng noted tenderness in Maynard's knee, analgic gait, and weakness of the left knee flexors. (AR at 1711.) Ultimately, Dr. Ng opined that she did "not think that the patient is able to do gainful employment considering the persistent impairment and pain at multiple sites of the body." (AR at 1712.) Dr. Ng restricted Maynard to: (1) three hours per day of work total; (2) sedentary exertion work with lifting a maximum of five pounds; (3) frequent sitting/driving; (4) seldom standing or work overhead; and (5) never bending, squatting, or twisting/pivoting. (AR at 1713.)

The other two opinions considered by the ALJ are those of state agency doctors. (AR at 259-61; 293-95.) Both Dr. Fowler and Dr. Hinchen opined that Maynard could perform a range of light work, including frequently being able to: stoop; kneel; crouch; crawl; climb ladders, ropes, and scaffolds; and handle with his left upper extremity.

Ultimately, the ALJ found Dr. Ng's opinion "unpersuasive" for the following reasons:

> The treating source opined that the claimant is not able to do gainful employment because of the persistent impairment and pain at multiple sites in the body. This opinion is inconsistent with the claimant's treatment records, which document degenerative disc disease and mild carpal tunnel syndrome and osteoarthritis. It is also very conclusory and is inconsistent with the claimant's work after onset and his own Function Report, which said he could walk 4-6 blocks. Accordingly, I find this opinion unpersuasive.

(AR at 117.) In contrast, ALJ Wardell found the state agency doctors' opinions to be

"persuasive," on the grounds that the opinions "are consistent with the claimant's treatment records, which document degenerative disc disease and mild carpal tunnel syndrome and osteoarthritis but only conservative treatment and normal gait and strength." (AR at 116.)

After review of the record and the ALJ's explanation, the court agrees with plaintiff that she did not properly consider the consistency and supportability of Dr. Ng's opinions. First, it is hard to know what to make of the ALJ's statement that Dr. Ng's opinion was "inconsistent with the claimant's treatment records, which document degenerative disc disease and mild carpal tunnel syndrome and osteoarthritis." (AR at 117.) Except for her qualification that Maynard's carpal tunnel syndrome was only "mild," nothing about this explains why or in what way Dr. Ng's opinion was inconsistent with the treatment records documenting Maynard's medical impairments. To the extent the ALJ also suggested that Maynard's osteoarthritis was also "mild," this does not appear to be supported by the record. (*See* AR at 2313 (describing Maynard's osteoarthritis as "severe" in his right hand and "moderate-severe" in his left hand).) In contrast, the ALJ provided the exact same rationale to *credit* the state agency doctors' opinions, stating that the opinions "are consistent with the claimant's treatment records, which document degenerative disc disease and mild carpal tunnel syndrome and osteoarthritis." (AR at 117.)

Additionally, the ALJ failed to acknowledge the ways in which Maynard's non-severe impairments, including his knee and elbow problems, were consistent with or supported the opinions. In assessing an individual's residual functional capacity, an ALJ is obligated to consider *all* of a claimant's impairments, including those that are not "severe."

6

20 C.F.R. § 404.1545(a)(2). As to Maynard's knee problems, the medical record shows that before his claimed onset date, Maynard underwent a partial medial meniscectomy -- the surgical removal of damaged parts of the meniscus[4] -- after which he attended physical therapy (AR at 2244, 2247, 2254), experienced knee pain (*e.g.,* AR at 2244, 2259, 2264, 2301), and had less than full function of his knee (*e.g.,* AR at 2282, 2248). After his onset date, he also continued to report periodically knee issues, including: he "does not bend the knee that much" (AR at 2277); a diagnosis and follow-up appointments for chondrocalcinosis of the knee (AR at 2469, 2492, 2718, 169, 75); and continued reports of knee pain (AR at 2492, 176).

His elbow issues are also documented in the record. In April of 2014 (again before his onset date), Maynard underwent a left medial tenotomy[5] to treat his left medial epicondylitis, which is a type of tendinitis that affects the inside of the elbow. (AR at 721-22.) He also continued to report elbow issues after his alleged onset date, including reporting "significant" pain when reaching and picking up items during his part-time job (AR at 2273) and "mild pain" in both elbows from his part time job (AR at 1790).

Of the records described above, the ALJ referenced *only* Maynard's report of "mild pain" in his elbows, entirely omitting any discussion of his persistent knee issues. By doing so, she simply failed to consider adequately whether the opinions from Dr. Ng and the

---

[4] What Is a Meniscectomy?, Healthline (Mar. 12, 2019), https://www.healthline.com/health/meniscectomy.

[5] A surgical procedure to trim damaged or scarred tendon tissue in the elbow. Elbow Tenotomy, Healthgrades (Nov. 11, 2020), https://www.healthgrades.com/right-care/bones-joints-and-muscles/elbow-tenotomy.

state agency doctor opinions were consistent with or supported by relevant medical evidence. In particular, Dr. Ng's opinion rested in large part on Maynard's knee issues, as reflected in part in her proposed limitations -- sedentary work, seldom standing, and never bending, squatting, or twisting/pivoting. Thus, the ALJ erred by seemingly wholly failing to consider the evidence that supports Dr. Ng's opinion, and arguably does *not* support the more limited restrictions proposed by the state agency doctors.

In fairness, there is evidence that suggests that Maynard's knee and elbow problems may not have warranted additional, functional limitations. (*See* AR at 1787, 2409, 2432, 2445 (showing generally normal gait, normal strength, and ability to move extremities without difficulty).) Still, the court cannot say that the ALJ's erroneous analysis is harmless. Dr. Ng opined that Maynard should be limited to a sedentary job -- and certainly his knee issues are relevant to that consideration. Moreover, given his age and educational background, a finding that Maynard could *only* perform sedentary work would render him presumptively disabled under the medical vocational guidelines. Because the court cannot say with great confidence how the ALJ would rule on remand given proper consideration of the evidence, her error was not harmless and a remand is appropriate. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (an ALJ's error is harmless if a court can "can predict with great confidence what the result on remand will be").

ORDER

IT IS ORDERED that the decision of defendant Andrew Saul, Commissioner of Social Security, denying plaintiff Christopher Maynard's application for social security

disability benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Entered this 3rd day of August, 2021.

                              BY THE COURT:

                              /s/

                              _____
                              WILLIAM M. CONLEY
                              District Judge